United States v. Martinez, 22-11-67. May proceed. May it please the court. My name is Ryan Ray and I represent the defendant and I request to reserve two minutes of my time in rebuttal. Could you speak closer to the microphone? Yes, Your Honor. This court should reverse Mr. Martinez's conviction and remand for a new trial based upon two separate and distinct plain errors that occurred during the course of his trial. Counsel, can I just stop you there? I just, you agree that it's plain error review. I do, Your Honor. For both propositions that we're raising, it is plain error review. Okay. Thank you. The first error, plain error, was that the government was allowed to introduce expert testimony from a law enforcement officer about the connection between so-called narco-saint iconography and drug trafficking, which this court found to be inadmissible in United States v. Medina Copete. That was a published decision of this court in 2014. The second plain error that we assert occurred was that during Mr. Martinez's direct examination about the factual basis for his entrapment defense, there was a loud announcement that played over the courtroom audio system that proclaimed that criminals were seeking to defund the police and needed to be stopped, especially given the politically charged nature of those comments. The fact that Mr. Martinez's defense was based upon a variant of police misconduct and the timing of the comments during the course of trial, the district court should have either declared a mistrial or given a limiting instruction that complies with the Hardwell decision we cited. Well, he told him to disregard it twice. Now, what more would you have asked for? Well, I would say this, Your Honor, as to the second time, it's not at all clear to me that he was referring to the announcement as opposed to the recess. That disregard the recess? That doesn't make any sense. He said, please disregard our interruption. There certainly had been an interruption in the proceedings taken by the court to try to deal with this issue. So that certainly is not an instruction that specifically tells the jury. I'm sorry, I'm not following your argument on that at all. Your Honor. He said disregard the interruption. He said our interruption. If I read the transcript. It was right there in the courtroom. Now, what are you talking about our interruption? Well, but there had been, Your Honor, an interruption in the proceedings, a break taken of some length to try to deal with that. And that's not, the Hardwell decision says that the court should instruct the jury to disregard the content of what was said. And that wasn't done in either instance. That wasn't what was, there was not a specific instruction to the jury that they could not consider that for any purpose. Well, perhaps you should have stood up and asked him to do a specific instruction. Well, perhaps Mr. Martinez's trial counsel should have done that. But it didn't. And so it do not, his instruction to disregard  It did, Your Honor. And, but it still can be reviewed under plain error. Well, I got to find a plain error. That's what I'm looking for first. I've got to find an error and then we can determine whether it's plain or not. The error, he told them to disregard the short little statement that came across.  Your Honor, that is that we submit creates an unacceptable risk of an impermissible factor in influencing the jury's decision that the U.S. Supreme Court has forbade in the Holbrook case and the Estelle case. So that's the, that there is a circumstance that occurred during the trial that created an unacceptable risk of an impermissible factor influencing the jury's decision. That's the error. So you're focusing on the content of what was said, not the interruption. Is that the line you're trying to draw? It is, Your Honor. I don't assert that any interruption without limitation is necessarily a violation. It's the specific nature of what was said in this interruption in the context of this case. So help me understand that. What was said, how did that somehow affect your case, the substance of it? The substance of what was said, Your Honor, is that criminals were seeking to defund the police and needed to be stopped. And that was said during the course of Mr. Martinez's direct examination on the factual basis for his entrapment defense. That was the moment at which that happened. And so at the time in which the jury should have been hearing his version of events underlying entrapment, they instead heard a pro-police message that was anti-criminals on the issue of defunding the police, which was a particularly politically charged issue, especially at that time in the summer of 2021. And it's all of those things taken together that create an unacceptable risk, an impermissible risk of the jury's decision being influenced by an impermissible factor. It certainly is all of those things taken together in the specific context of this case where the defense was entrapment, which is an affirmative defense that necessarily admits the underlying conduct and is then based upon misconduct by the police. And when that is the situation and this kind of message is made over the courtroom audio system, that is what runs afoul of the principle in Holbrook and Estelle. How was the error obvious? Given the nature of what was said, it should have been obvious that this created that kind of impermissible risk in the specific context of this case. Once again, that type of statement, and especially during Mr. Martinez's direct examination, created that kind of impermissible risk. Also, though, I would like to go back to the first plain error that we assert here, which was the admission of this testimony that there is a correlation between worship of Santa Muerte or some other kind of, quote, narco saint, as the case law refers to it, and drug trafficking, which is exactly what this court found in Medina Copete. Well, can I stop you there, though, because in the Medina case, are you arguing that that case creates a per se rule against any testimony regarding shrines? I am arguing, Your Honor, that what is absolutely prohibited is the mere observation that a correlation exists, especially when the observer is a law enforcement officer likely to encounter a biased sample. The court said that does not meaningfully assist the jury in determining guilt or innocence. And without that meaningful assistance, Rule 702... How is this not meaningfully assistant? I don't understand how you, what's your argument that this case falls under the Medina case? Because what happened there and what happened here is that a law enforcement officer made an observation on the stand that there's a correlation that exists between drug trafficking and worship of these figures, Santa Muerte being one of them. That is all that, that is what happened there, and the court held that that does not meaningfully assist the jury. That's exactly the kind of testimony that was permitted in this case to be introduced in rebuttal. Let me understand then, you're suggesting here, this is a mere observation? There's nothing more than a mere observation? And that's exactly what the nature of the testimony was, is that this officer in this case testified that in his view, there was a 100% correlation. In his experience, he was testifying to what he had seen, not independent investigation like in Medina, where the guy on his own had supposedly done an investigation and came to this conclusion and thus was an expert. This was a law enforcement officer who was giving his background and they asked him, in your experience, so what has your experience been with respect to this? And you're totally different than Medina. Well, Your Honor, the testifying witness in Medina was a law enforcement officer. He was an officer, but he did not testify that that was his on the ground experience. It was a separate research he had done on his own time. Well, Your Honor, I respectfully, the opinion does talk about his work as a narcotics detective and his compilation of several cases from other law enforcement officers. So as I read the opinion, Your Honor, this gentleman had experience in this field. He worked as an officer in El Paso, Texas, and he observed this kind of correlation in his direct experience. And then in addition to that, he did independent research on his own accord. And as I read the opinion, he was relying on all of that to give his testimony. But again, and the opinion makes clear, Your Honor, that, and it's quoting the advisory committee notes to rule 702, if there is testimony based on experience, there is supposed to be an explanation of how the experience leads to the basis for the opinion and how the experience is reliably applied to the facts of the case. None of that happened in this case. Well, didn't the officer say that the only time he had seen these shrines was in connection with drug trafficking? Isn't that the connection there? Or does that not count? Well, what he said was that if he saw a shrine in someone's life, he'd expect them to be associated with drug trafficking. And he said, yes. He did not explain, based upon anything in particular in his experience, how that's so. He simply did what the court in Medina Capete said, which is he observed there was a correlation. He was a law enforcement officer likely to have encountered a biased sample, just as the court said there in Medina. And that's exactly what the court found in Medina was inadmissible. And I would respectfully request to reserve the balance of my time, unless the court has other questions at this time. Thank you. May it please the court. My name is Cyrus Chung. I represent the United States in this matter. The defendant, or counsel for the defendant, indicated that one of the problems here was that there was no analysis of how Detective Jefferson's experience led to his testimony. But here, there was no objection below. There was no opportunity for the district court to make that analysis. And indeed, in Medina Capete, what's really going on is in that opinion, there's a lot of faulting of the district court's reasoning. And here, the panel has no record from which to make that judgment, because there was no objection below. There was no Daubert hearing. There was no contemporaneous objection at trial, such that the district court might have had any opportunity to correct any supposed error that was in Detective Jefferson's testimony. And as your honors have noted here, the testimony itself was distinct. The government in Medina Capete characterized Marshall Almonte there as a cultural iconography hobbyist. They had a separate drug expert, a separate narcotics detective, or a person who was going to testify as to drug practices. But Marshall Almonte was brought in because of his research, his sort of fascination with Santa Muerte and Jesus Malverde and other figures of the Mexican sort of spiritual underworld. And there is a deep undercurrent there of skepticism when it comes to a marshal testifying about what constitutes a legitimate religion and what does not. But here, as the panel has pointed out, what Detective Jeffers was doing is what this court has said is fine in Cushing and Camahele, that he's elucidating something for the jury about the criminal underworld, certain practices that he has seen in his experience as a law enforcement officer. And so this case is distinguishable from Medina Capete. In addition, even if the court doesn't reach the issue of error or whether that error is plain or clear or obvious, the court can affirm the judgment below on the grounds that the testimony didn't affect the defendant's substantial rights. There was ample evidence of the defendant's guilt. He stipulated to the elements of the offense. Before you move on to that, let's get back to the Medina case. I understand your point to be that the District Court judge here wasn't given an opportunity to really consider this and therefore there's very little in the record. But I'm wondering, given that we have a case about this area, doesn't that put the District Court on notice that this is a very, you have to be careful with this kind of testimony. So I think careful and getting to clear and obvious error are two different things. Medina Capete could have set a per se rule. It could have said this rule sets the bar for all expert testimony about narco saints here now and forever. That's not what it did. When it characterized its holding, it was about the way the District Court analyzed the particular expert testimony in that case and subsequent cases like in United States against Vann, this court has characterized it about being about the particular expert that was testifying there, about there being speculative and meandering testimony in Medina Capete. I think if... Maybe you can help us, tell us what happened here that satisfies the requirement of the case. The District Court again didn't have the opportunity to make the record that Medina Capete was asking for. Without an objection, there was no opportunity for it to say here are the... And I understand that, but I guess I'm just asking you to tell us what did happen and why that is satisfactory. And here what happened is Detective Jeffers testified about his experience, specifically his experience in narcotics trafficking, and his experience included, I think, 18 years or so, specifically dealing with narcotics thousands of hours of physical surveillance, hundreds of interviews with confidential informants. It included a wiretap conversations, it included acting as an undercover, and that experience led him to be able to say that in his experience in investigating narcotics over the 18 years that he had done it, he had seen these sorts of shrines only in the houses of people who were connected with drug trafficking. And based on that experience, he was able to say that yes, if he saw that based on what he had seen in his 18 years of experience, he would expect that person, if he saw another shrine of that sort, to be involved in drug trafficking based on what he had seen in the past. He was elucidating something for the jury that they would not commonly be familiar with because they don't walk into the houses of drug dealers every day and see what items are commonplace and which ones are not. And that is different from someone who's coming in and saying, well, St. Jude is a legitimate saint and Santa Maria is not a legitimate saint, and I'm going to tell you a little bit about Catholic theology. And that's what was the sort of different basis. A lot more had to do with Marshall Almonte's sort of independent hobbyist studying of what he believed to be legitimate Catholicism. And that simply isn't here. Here, what you have is Detective Jeffers simply saying, I'm a narcotics detective. I've been in this field for 18 years. I've done thousands of these cases. This is what I've seen and this is why it is helpful to you. Turning back to affecting the defendant's substantial rights for just a moment. Again, here, there was a stipulation. There was an implausible story that the defendant was telling that the police had disregarded their own procedures to send in an armed informant to sell and to compel the defendant to sell him, and not give him, but to sell him methamphetamine at the market price for methamphetamine. And all the while, citing connections to the drug cartels, which itself begs a question of, if he has connections to the drug cartels, then why can't he get drugs from the cartels, as opposed to this person in an auto body shop in Denver? The defendant had previously lied under oath and had a number of implausible details in his story, including the existence or lack thereof of a Juan Lopez, who was supposed to be his source of supply, for which there was no other evidence other than his testimony of the existence, let alone the source of supply nature of Mr. Lopez. Turning very briefly to the other issue that was raised by the defendant about United States against Hardwell, it surely, it cannot be plain error. The distinction between saying, please disregard our interruption twice, and saying, please disregard our interruption, and the things that they said during the interruption, truly that cannot be plain error. And Hardwell doesn't say otherwise. Really, that is a case that is about something different. It is about a 404B instruction that simply cited all of the permissible purposes that are in 404B, rather than focusing in on the particular purposes for which the testimony was admitted. And it has no per se rule that says, if you don't also say, and its contents, then this is obvious error. Unless the panel has any other questions for me. Then I'll rest on the papers. Just very briefly, Your Honors. The court, nevertheless, has a gatekeeping role in admitting expert testimony to evaluate the testimony and ensure that it complies with the relevant standards. And here, that should have included the rule of Medina Copete. And it should, we recognize that's the exception, but the exception is that you can't offer this kind of testimony that espouses a correlation between worship of the Santa Muerte and being a drug trafficker. That is the exception identified there to the rule that law enforcement officers can offer testimony based upon their training and experience. And it is that rule that should have precluded this particular testimony that's on pages 260 and 261 of volume 7. That's really what we're talking about. We're not saying this gentleman could not testify as to anything whatsoever. It's this specific testimony that identifies a correlation based only on law enforcement experience, which was present in Medina Copete, is present here. It is the same type of testimony that's forbidden and it should not have been allowed here. Thank you. Thank you. All right, our case stands submitted and counsel is excused.